# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Commonwealth of Pennsylvania

**Wessie Sims, Plaintiff pro-se**
   against Defendants
*City of Philadelphia.*
**Zoning Board of Adjustments**
**Lynette M. Brown – Sow, Chairwoman**

*12cv 5486*

**Members:**
Carol B. Tinari
Anthony Lewis – Sam Staten, Jr.
Martin G. Bednarek
Mary Jane McKinney – Board Administrator
Larissa Klevan – Planning Commissioner
Christine Quinn – Plans Examiner
John V. Wolfe – Department of License and Inspection
City and County of Philadelphia, State of Pennsylvania

## Complaint
## Denied XIV Sect. 1

Plaintiff Wessie Sims pro-se alleges that:

1. This civil action is brought against each and all defendants named in this complaint.

2. This complaint is filed within Pennsylvania's two-year statue of limitations for personal injury 42 pa.C.S.A.5524.

3. District Courts jurisdiction ch.231, (1911).
   Sect. 24. The district courts have original jurisdiction as follows:
   > Civil rights suits Twelfth: of all suits authorized by law to be brought by any person for the recovery of damages on account of any injury to his person or property or of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section nineteen hundred and eighty revised statutes.

Statement of the case: Plaintiff Wessie Sims pro-se alleges that:

1. On December 1, 2009, plaintiff applied for a zoning permit from the Philadelphia Department of License and Inspections to use her property at 2103 N. Woodstock Street, Philadelphia, PA 19121 as a rooming house. Plaintiff's intent was to rent out all five rooms of the house to adult individuals, all of whom will be self sustaining and capable of self-preservation. She was only allowed by L&I to rent out three of the five rooms.

2. On January 20, 2010 the permit was denied because Philadelphia zoning code 14-205 requires a minimum rear yard area of five hundred forty-four (544) square feet for five families.

3. The property in question is a single-family dwelling proposing a rear yard area of two hundred thirty (230) square feet. In an R-10 district. The minimum requirement is 144 square ft. for the first family under code 14-205.

4. After hearing testimony at a public hearing March 3, 2010, the Board voted to deny the zoning variance September 15, 2012.

5. The Board's decision highlighted that the property had only one bathroom and no fire escape on the upper floors.

6. The Board's vote was unrelated to code 14-205 requiring a minimum rear yard area for five families, five hundred forty-four square feet (544).

7. There was no mention of the size of the yard code 14-205 was never voted on by the Zoning Board.

8. Plaintiff retained zoning attorney Francesco D'arro who wrote a letter to the Board requesting a reconsideration of the variance. The Board denied his request October 12, 2010. The attorney appealed to the Common Pleas Court. The appeal was denied August 24, 2011 and the Zoning Board's decision was affirmed this was injustice.

4. Redress for deprivation of civil rights:
Fourteenth: of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation under color of any law statute, ordinance, regulation, custom or usage of any state, of any right, privilege or immunity secured by the Constitution of the United States providing for equal rights of citizens of the United States or of all persons within the jurisdiction of the United States.

### Issuing Executive Order no. 9808.
### Dec. 5, (1946) 11 F.R. 14153 Statement
### By President Harry S. Truman.

Provides:

5. The Constitutional guarantees of individual liberties and equal protection under the laws clearly place on the federal government the duty to act when state or local authorities abridge or fail to protect these Constitutional rights.

6. Article 6 provides:
That state laws are bound to agree with laws in the Constitution T. (10-H) and all Judges have sworn or affirm to protect and defend the Constitution of the United States on their oath or affirmation.

At the March 3, 2010 hearing the Boards decision highlighted that the property in question:
1. Had only one bathroom and no exits on the upper floors. It is a three-story building having not one but three exits and in compliance with the code F-4604.241. Plaintiff

proposed to install fire escapes for the second and third stories of the building. Subsequent to the hearing, plaintiff presented a drawing of the location of the new bathroom as well as sketches showing a proposed fire escape starting from the third floor to the ground, which were received by the Board May 5, 2010.

2. On January 20, 2010 the permit was denied under zoning code 14-205 which requires a minimum rear yard of 544 square feet for five families. The property in question has a rear yard area of 230 square feet zoned for a single family not a five family structure.

3. The Philadelphia zoning code 14-205, which is unrelated to the Board's decision highlighted that the property had only one bathroom and no fire escapes. 14-205 yard space requiring a rear yard area of (544) square feet for five families was never heard before the Board Wednesday, March 3, 2010 the date of the public hearing more over the size of the yard was never mentioned: Plaintiff was denied without a hearing on code 14-205

Right to procedural due process is applicable:

29. To state action which impairs a person's interest in either liberty or property Amend. XIV

30. On September 15, 2010 the Board voted and denied the requested variance to use plaintiff's property located at 2103 N. Woodstock Street, Philadelphia, PA 19121 as a rooming house for a total of five (5) rooming units with a maximum of five (5) occupants. Where three (3) of the five (5) rooming units were already occupied with three (3) occupants. She was requesting to occupy the remaining two (2) rooming units on the third floor of the existing property.

31. Plaintiff was denied the requested variance under the Philadelphia code 14-205 district permitted uses. The vote was unrelated to the code.

32. The Board violated plaintiff's procedural due process right when it did not hold a hearing on code 14-205 district permitted uses and the Board did not give a written statement of reasons for its denial of the requested variance.

33. This was arbitrary and capricious this action was willful and unreasonable and without consideration in disregard of facts or law without determining principle.

Plaintiff was treated unfairly.

34. All person's similarly circumstanced shall be treated alike.

<u>**Aladdin's Castle Inc. V. City of Mesquite, C.A. Tex.630, F. 2d 1029, 1039**</u>

35. In 1962 the United States Supreme Ct. ruled unfair treatments is discrimination and this goes against the Constitution. Plaintiff was discriminated against.

36. Plaintiff was not protected against arbitrary and capricious denial by concept of substantive due process where she did not have her procedural due process right to a hearing and no written statement of reasons for denial. Substantive due process Amend. XIV.

37. The deprivation of plaintiff's XIV Amend. right was caused by state action, the Zoning Board of Adjustments and the Department of Licenses and Inspections.

38. Minimal procedural due process is that parties whose rights are to be affected are entitled to be heard. The guarantee of procedural fairness, which flows from the V and XIV Amend. Due process clauses of the Constitution.

**Fuentes V. Shevin 407, U.S.67, 79,**
**92,S.ct.1983, 1994 32, L. Ed. 2d, 556.**

This sort of action by the Zoning Board of Adjustment

39. And Department of License and Inspection violated plaintiff's right to the equal enjoyment of fundamental rights, privileges and immunities.

40. This action is in conflict with the clause of the XIV Amend. Supreme Court Dec. 1872.

2. The second clause protects from the hostile legislation of the states, the privileges and immunities of citizens of the United States as distinguished from the privileges and immunities of citizens of the States. As defined by justice Washington in the district of Pennsylvania (1823)

**Corfield v. Corvell**
**and by the Court Ward v. Maryland which:**

3. Embrace those fundamental civil rights for the security and establishment of which organized society is instituted.

4. The clause, which forbids a state to deny any person the equal protection of the laws was clearly intended to prevent the hostile discrimination against the negro race so familiar in the state where he had been a slave, and for this purpose the clause confers ample power in congress to secure his rights and his equality before the law.

**Cause of Action**

1. This action was caused by fraud and false statements made by L&I. Where L&I determined that:

2. Section 14-205 of the Philadelphia Zoning Code prohibits five (5) occupants because the minimum rear yard area for five families is 544 square feet and the owner is only proposing 230 square feet.

3. Plaintiff applied for a permit as a rooming house for a total of five (5) rooming units with a maximum of five (5) occupants.

4. The property in question is a single-family dwelling.

5. Where Code 14-205 district permitted uses in an R-10 district allows:

6. Single family duplex two family, multi-family residential related uses, non-residential uses other permitted uses permitted building type detached, semi-detached, attached, multiple buildings lot.

7. L&I failed to disclose material true facts of Code 14-205 favorable to plaintiff where the code allows single-family dwellings in an R-10 district.

8. This statement by L&I was made recklessly without honest belief in its truth and with purpose to mislead and deceive plaintiff. This was willful misconduct.

Elements of a cause of action for fraud include

6. False representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation.

### Citizens Standard Life Ins. Co. v. Gilley, Tex. civ. App. 521 S.W.2d.354,356

7. Bad faith and fraud are synonymous and also synonyms of dishonesty, infidelity, faithlessness, perfidy, and unfairness.

8. But for this failure by L&I to uncover material true facts of Code 14-205 the outcome of this case would have been different.

9. L&I state actor acting on behalf of the state without the substance of legal right deprived plaintiff of equal protection of the laws guaranteed to her by the United States Const.

10. In demand equal protection of the laws. The Constitution guarantees that right to every person regardless of his background.

### Shelly v. Kraemer 334 U.S.I 1948

11. This act was done under color of state law without and beyond the bounds of lawful authority, and done under color of office when the office does not confer on L&I any such authority. False statements

Because of her race and color plaintiff allege that she

12. Has been denied a right, which under similar circumstances would have been accorded to a person of a different race.

13. Plaintiff was denied due process of law and discriminated against on account of race and color.

14. This falsehood was an intentional statement of the untruth deliberately said to mislead plaintiff and deceive her. This was willful misconduct.

### Relief sought. Justice.

15. Plaintiff allege that she is an indigent person proceeding without legal skills who seeks at the hands of the court deliverance from oppression from this false statement made by L&I to deceive her. Plaintiff believed this statement to be true the facts of the code was withheld and material to plaintiff where the code under section 14-205 permitted single family dwellings in an R-10 district.

16. Under the law thus the phrase an action will not lie means that an action cannot be sustained that there is no ground upon which to found the action.

### Cause of injury
### Fraud and false statements by L&I

17. Court but for rule: The injury to an individual would not have happened but for the conduct of the wrongdoer. This conduct was willful. This injurious falsehood constitutes actual damages.

### The court held in: Schapiro v. Tweedie Foot
### Wear Corporation C.A.P.A.131, F.2d 876, 878

A. Such are more than erroneous or untrue and impact intention to deceive.

B. Ch. 47 18.U.S.C.A. 1001 the federal criminal statute governing false statements:

1. Falsifies, conceals, or cover up by any trick, scheme, or device a material fact.

2. Makes any materially false, fictitious, or fraudulent statement or representation, or.

3. Makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years or both

4. Plaintiff acted upon this statement made by L&I and hired an attorney by the name of Francesco D'arro who made her aware of district permitted uses in an R-10 district. She believed the statement to be true because she was naive to the fact or law in zoning.

### Despite code 14-205 allowing single-family dwellings.

5. The Philadelphia City planning commission recommended denial of the requested variance because the proposed use of the subject property represents an over use of the property. Property planning commission Larissa Klevan must be aware that code 14-205 allows single family dwellings in an R-10 district and this would not be an over use of the property.

### Carey V. Piphus Certiarari to the
### United States Court of Appeals
### Seventh Circuit No.76-1149
### Argued December 6, 1977 – Decided March 21, 1978

41. The court held: without procedural due process, the students, absent proof of actual injury, are entitled to recover only nominal damages pp. 253-267.

   (E.) Because the right to procedural due process is absolute in the sense that is does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process should be actionable for nominal damages without proof of actual injury.

### XIV Amend. 1868

42. Sect. 1 No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

### Plaintiff was denied due process

43. Where the Zoning Board did not hold a hearing on the Philadelphia code 14-205 district permitted uses. Due process was denied.

### Aside from all else, due process requires

44. Fundamental fairness and substantial justice.

### Vaughn v. State, 3 Tenn. Crim. App.
### 54, 456.S.W.2d 879, 883

45. Fundamental requisite of due process is the opportunity to be heard to be aware that a matter is pending, to make an informed choice whether to acquiesce or contest, and to assert before the appropriate decision making body the reasons for such choice.

### Trinity Episcopal Corp. v. Romney
### D.C.n.y. 387, F. supp. 1044, 1084

46. Liberty interest is recognized as protected by the due process clauses of state and federal constitutions, U.S.C.A. V and XIV as well as interests created when states either legislatively or administratively impose limitations on their discretion and require that a specific standard prevail in decision making.

### Adams v. Wainwright D.C. Fla.
### 512 F. Supp.948, 953

### Eastern District o P.A. (1995)
### U.S.C.A. Const. Amend. 5.
### Barns v. Reno. 899 F. supp 1375

47. The court held right to due process attaches where asserted liberty interest is recognized as protected one by Constitution or statute.

**Camaron Apartments, Inc. v. Zoning**
**Board of Adjustment of City of Philadelphia**
**14 P.A. Commonwealth**
**571, 324, p.a. 2d 805, 807**
**Argued: April 1, 1974**

48. Non-conforming use is one which does not comply with present zoning provisions but which existed lawfully and was created in good faith prior to the enactment of the zoning provision.

**Beyer v. Mayor and City Council**
**Of Baltimore City**
**No.48 Court of Appeals of Maryland**
**December 15, 1943**

49. Held: non-conforming uses are uses permitted by zoning statutes or ordinances to continue notwithstanding similar uses are not permitted in area in which they are located.

Plaintiff's constitutional rights were violated

10. Under both the United States Constitution XIV sect. 1 and the Pennsylvania Constitution of the Commonwealth of Pennsylvania held in Philadelphia July 15, 1776 by president Benjamin Franklin

Chapter 1

11. A declaration of the rights of the inhabitants of the commonwealth or state of Pennsylvania sect. 1 that all men are born equally free and independent, and have certain natural inherent and unalienable rights amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property and pursuing happiness and safety.

12. Article XI that in controversies respecting property, and in suits between man and man, the parties have a right to trial by jury which ought to be held sacred:

Chapter 11

Plan or frame of government for the commonwealth or state of Pennsylvania

13. Sect. 46 the declaration of rights is hereby declared to be a part of the Constitution of this Commonwealth and ought never to be violated on any pretence whatever.

14. Amendment XIV sect. 1 (1868) no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States nor shall any state deprive any person of life, liberty or property without due process law nor deny to any person within its jurisdiction the equal protection of the laws.

The federal criminal code ruled interference

15. With constitutional rights a crime while the XIV amendment applies to the state and the equal protection clause was designed to end discrimination and to make the Constitution color blind.

16. In 1964 the court held that the equal protection clause lays down an equal population principal for legislative apportionment. The Constitution under this principal demands substantially equal representation for all citizens.

17. In demand equal protection of the laws the Constitution guarantees that right to every person regardless of his background.

**Shelly v. Kraemer**
**334 U.S.1 (1948)**

18. The fundamental right of an individual is protected in the state declaration of rights. Where rights are denied section 241 includes an injury to any citizen in the free exercise or enjoyment of any right or privilege secured by the Constitution and laws of the United States. This statute includes any rights or privileges protected by the XIV Amendments. Section 241 incorporates the equal protection clause itself.

**Reapportionment Case.**
**Renolds v. Sims**
**377 U.S.533 (1964)**

Denial of permit would result in an unnecessary hardship to owner of nonconforming use and that

19. By granting permit substantial justice was done, Zoning Board of Adjustment had statutory authority to grant a variance to permit an addition to nonconforming use R.L.c.51, 62, subd. 3

**Fortuna v. Zoning Board of Adjustment**
**of City of Manchester et al.**
**Supreme Court of New Hampshire**
**Hillsborough, July 6, 1948**
**Rehearing Denied July 28, 1948**

**St. Onge v. City of Concord**
**Supreme Court of New Hampshire**
**Merrimack Oct. 5, 1948**
**As modified on rehearing Jan. 5, 1949**

20. Any hardship suffered by a property owner as result of interference with owners right to use property without commensurate public advantage, though no public or private rights are affected thereby is an unnecessary hardship within meaning of statute

empowering a Board of Adjustment to authorize variance from terms of ordinance R.L.C.51, 62 subd. 3

## The Pennsylvania Constitution 1776

21. Section 46 the declaration of rights is hereby declared to be a part of the Constitution of this commonwealth and ought never to be violated on any pretence whatever.

17. The Board's decision to deny the variance
Was not a valid vote because:

18. The Philadelphia Zoning Board has set requirements for valid actions by the board, including:

19. Four members of the board shall constitute a quorum for any public hearing required under title 14-1805.

20. The concurring vote of a majority of the Board, present and constituting a quorum at a public hearing, shall be required for action by the board.

21. At the March 3, 2010 hearing four-members of the Board were present, constituting the minimum requisite quorum for the hearing to proceed. Which means that a minimum of three members of the Board who was present at the hearing needed to vote on the variance, this did not occur.

22. Of the four present at the hearing only Lynette Brown-Sow and Carol Tinari voted. Neither Martin G. Bednarek nor Anthony Lewis, who were present at the hearing voted. The only other vote came from Sam Staten, Jr. who merely voted based on a reading of the hearing transcript, and was not actually in attendance at the hearing. The final member of the Board, Peter Gonzales, did not attend the hearing or vote. The vote of the Board is attached.

The key political rights decision in

## Baker v. Carr 369 U.S. 186, (1962)

23. In which the federal courts were ruled competent to entertain an action challenging legislative apportionments as contrary to equal protection.

24. Plaintiff was denied the equal protection of the laws accorded her by the XIV Amendment of the Constitution of the United States. Showing disadvantage to myself as an individual.

25. The federal Constitution provides that judicial power shall extend to all cases article 3 and 2.

26. A federal court cannot pronounce any statute of a state of the United States void.

27. Supremacy Clause II states that this constitution and the laws of the of the United States which shall be made under the authority of the United States shall be the supreme law of

the land, the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary not withstanding, laws which conflicts with the Constitution is invalid.

28. Due process is stated not once, but twice in the Constitution under the V and XIV Amendments.

Plaintiff Wessie Sims alleges that:

A  Where each conspirator performed a separate function it serves in the accomplishment of the overall conspiracy which is a chain conspiracy

## Bolden v. State 44 m.d.app 643-410
## A 2d 1085 1081

1. Lynette M. Brown – Sow chairwoman of the Zoning Board of Adjustment and members of the Board failed to hold procedural due process hearing on Code 14-205 district permitted uses and no written statement of reasons for denial of requested variance.

2. Plaintiff was not protected against arbitrary and capricious denial by concept of substantive due process; plaintiff was denied her right to be heard. Denied due process XIV.

3. John V. Wolfe zoning codes compliance specialist was in charge of plaintiff's application filed December 1, 2009 with L&I. He determined that:

4. The proposed used of the subject property as a rooming house for five (5) occupants was prohibited under section 14-205 of the Philadelphia zoning code. This was fraud and false statements made by John v. Wolfe

5. Copy of conclusions of law by Darin J. Steinberg esquire attorney for the Zoning Board of Adjustments attached. October term 2010.

6. Moreover code 405.1.2 allows for six occupants in a rooming house where plaintiff would only have five (5) occupants with a maximum of five (5) rooming units.

7. Where plaintiff request at the hearing to use the remaining two of the five rooming units located on the third floor of the property where she was never allowed by L&I to use all five (5) rooms. copy of transcript next page attached.

8. Mary Jane McKinney Zoning Board administrator signed an invalid vote of the board. She failed to comply with the requirements set forth under title 14-1805 where there were only two votes Lynette Brown-Sow and Carol Tinari. The only other vote came from Sam Staten, Jr. who merely voted based on a reading from the hearing transcript but did not attend the hearing.

9. Where Chairwoman Lynette Brown-Sow stated "I will tell you now our concerns are more than three (3) people where code pm-405.1.2 allows six people at page (8) of transcript attached." Next page

10. Where Board member Anthony Lewis complained there was only one (1) bathroom for five (5) people, where code pm 305.1.2 allows for six (6) occupants for (one) bathroom page (8) of transcript attached next page.

11. Plaintiff was unaware of code pm-405.1.2 representation was made, and it was false board member Anthony Lewis knew it was false, or else made it without knowledge as a positive statement of known fact, plaintiff believed the representation to be true, plaintiff relied on and acted upon the representation.

12. Plaintiff then hired a contractor to do the drawing of the proposed new bathroom. She submitted the drawing to the Board on May 5, 2010

13. After retaining, Zoning Attorney D'arro he made her aware that the code does not require an additional bathroom for five (5) occupants copy of conclusions of law by Darin J. Steinberg, Esquire Attorney for Zoning Board of Adjustment.

14. Christine Quinn, Plans Examiner for L&I prepared notice of refusal stating the minimum rear yard area for five families required 544 sq. feet and the property in question proposed only 230 sq. feet she is aware that plaintiff submitted an existing floor plan dated September 5, 2009 proving the size of the property in question is a single family structure. Notice of refusal and floor plan attached.

15. Section 14-1806 states all decisions of the Board shall be in writing. Copy of notice of decision is not in writing by Board member Carol B. Tinari copy of decision dated 9-15-10 attached

16. Martin G. Bednarek, present at hearing but did not vote.

17. Anthony Lewis present at hearing and did not vote.

18. Under code 14-1805 hearings: sect 6. The board shall keep minutes of its deliberations showing the vote of each member upon each question or if absent or failing to vote indicating such fact and shall keep records of its hearings.

19. The Board does not indicate why the members present did not vote. Vote of the Board copy and signature attached. Signed by Mary Jane Mckinney, Administrator

20. Under code 14-1805 hearings.

Section 2: four members of the board shall constitute a quorum for any public hearing required under 14-1805.

Section 3: the concurring vote of a majority of the Board present and constituting a quorum at a public hearing, shall be required for action by the Board. This did not happen in the instant case.

21. Where chairwoman complained of exits:

22. F-1027.1.1 existing buildings with one (1) exit states: where a building with one exit was constructed in conformance with the building code in effect at the time the building was

constructed the single exit is acceptable providing it is in accordance with one of the following conditions.

23. A residential building not exceeding (3) stories above grade. The property in question not exceeding 3 stories above grade

22. Plaintiff believed and acted upon this representation by chairwoman Lynette Brown-Sow.

23. She then hired a contractor to sketch the fire escape the sketch was received by the Board on May 5, 2010, where the building code did not require this. Copy attached.

24. Where John v. Wolfe made false statements under section 14-205 district permitted uses. He committed a crime under title 18u.S.C.A 1001 where multiple uses in an R-10 district are allowed by the Philadelphia code 14-205. The vote of the Board show roll down window ladder which had nothing what-so-ever to do with code 14-205 requiring a minimum rear yard area of five hundred forty-four (544) square feet for five families. This was action under color of state law.

### Oct. (1879) ex parte Virginia

25. Sect. 3. Whoever by virtue of his public position under a state government deprives another of life, liberty, or property without due process of law or denies or takes away the equal protection of the laws, violates that inhibition.

26. This incorrect statement by John V. Wolfe was made with knowledge of incorrections with reckless indifference to actual facts and with no reasonable ground to believe it correct.

### International Shoe Co. v. Lewine
### C.C.A.miss. 68 f.2d.517, 518

27. They all conspired together only with a separate function.

28. This criminal conduct was intentional and malfeasance it is positively unlawful. This conduct by state actor John v. Wolfe interferes with his performance of official duty. This was wilfull misconduct.

29. This is intentional tort under Pennsylvania's political subdivision tort claims act (PSTCA). He acted outside the scope of his official duty carried out with intentions of achieving exactly this wrongful purpose by depriving plaintiff of her XIV Amendment right guaranteed to her by the United States Constitution and the Pennsylvania Constitution declaration of rights of the inhabitants.

30. Each and all defendants named in this complaint knew the purpose of this conspiracy and agreed to become a party to the plan to effectuate this purpose.

### Craig v.U.S.CA.cal 81,F2d,816,822

1. Plaintiff Wessie Sims alleges that she is an indigent person seeking at the hands of this court deliverance from oppression, from this wrongful act done by state actors acting under color of state law. And without the substance of legal right. This misuse of power possessed by virtue of state and made possible only because the wrongdoer is clothed with authority of the state.

## Supreme Court Oct. (1879)
## Ex parte Virginia

Sect. 2. The section of the act entitled, an act to protect all citizens in their civil and legal rights approved March 1, (1875) which enacts that no citizens possessing all other qualifications which are or may be prescribed by law, shall be disqualified from service as ground or petit juror in any court of the United States, or of any state on account of race, color or previous condition or servitude and any officer or other person charged with any duty in the selection or summoning of jurors, who shall exclude or fail to summon any citizen for the cause aforesaid be deemed guilty. Authorized by the thirteenth and fourteenth amendment of the constitution.

Sect. 3 The inhibition contained in the fourteenth amendment means that no agency of the state, or of the officers or agents by whom her powers are exerted shall deny to any person within her jurisdiction the equal protection of the laws, whoever by virtue of his public position under a state government deprives another of life, liberty, or property without due process of law or denied or take away the equal protection of the laws violates that inhibition and as he acts in the name of and for the state and is clothed with her power. His act is her act. Otherwise, the inhibition has no meaning and the state has clothed one of her agents with power to anul or evade it.

Sect. 4 that amendment was ordained to secure equal rights to all persons.

## United States v. Classic
## 313, u.s.299, 326, (1941)

The courts conclusion in u.s.v. classic

1. That misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action taken under color of state law, was founded on the rule announced in exparte Virginia 100.u.s.339, 346-347. (1880). That the actions of a state officer who exceeds the limits of his authority constitute state action for the purposes of the XIV Amendment.

2. Plaintiff was denied due process:

   She was not afforded procedure due process right to a hearing.

## Pennoyer v. Neff 95u.s.733,24. L.Ed. 565
## Supreme Court Oct. (1877)

3. Sect. 8 the term, due process of law when applied to judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a competent tribunal to pass upon this subject matter and if that involves merely a determination of the personal liability of the defendant,

he must be brought within its jurisdiction by service of process within the state or by his voluntary appearance.

### United States v. Classic
### No.618 argued April 7, 1941
### Decided May 26, 1941

4. Held: section 19 of the criminal code, making it a crime to conspire to injure or oppress any citizen in the free exercise of any right or privilege secured to him by the Constitution.

5. Section 20: of the criminal code provides that whoever, under color of any law willfully subjects any inhabitant of any state to the deprivation of any right, privileges or immunities secured or protected by the constitution and laws of the United States or to different punishments, pains or penalties, on account of such inhabitant being an alien, or by reason of his color or race, than are prescribed for the punishment of citizens shall be punished as prescribed.

6. Chapter XXII April 20 1871.

   Any person under color of any law of any state depriving another of any right secured by the Constitution of the United States, made liable to the party injured. Proceedings to be in the courts of the United States.

7. Section 241 protects the free exercise of rights secured by the constitution or laws of the United States.

   1. Under color of state law where false statements were made by L&I stating that code 14-205. Prohibit five occupants in a rooming house. Fraud and false statements subject defendant to civil liability. 18.U.S.C.A 1001 governing false statements.

   2. Where the Board failed to hold procedure due process right to a hearing on code 14-205 plaintiff was denied due process of law, guaranteed to her by the United States Constitution this violated declaration of rights of the inhabitants.

   3. There are two aspects: procedural in which a person is guaranteed fair procedures, and substantive which protects a person's property from unfair government interference.

   4. Without a hearing the Board did not provide safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs.

   5. The Board failed to hold a hearing to decide facts, apply the law and resolve any and all disputes on the merits, any reasonal official would understand safeguards for individual rights are being unprotected without a hearing on code 14-205. Plaintiff was denied without a hearing.

### Title v. Commission on Civil Rights
### Section 102 Civil Rights Act of (1957)

6. (1) An accurate transcript shall be made of the testimony of all witnesses at all hearings either public or executive sessions of the commission or of any subcommittee thereof.

Relief sought:

1. Plaintiff seeks redress for the violation of her Constitutional and Civil rights which belong to her as a citizen of the state or country rights which include the rights of property, equal protection of the laws, and trial by jury etc.

   Rights secured to plaintiff as a citizen of the United States by the XIII Amend. (1865) and by the XIV Amend (1868) due process and by Civil Rights Acts of Congress made in pursuance thereof.

### Thirty-ninth Congress. Sess. 1. Ch.31.1866

2. An act to protect all persons in the United States in their civil rights, and furnish the means of their vindication. April 9, 1866.

3. An act to enforce the provision of the Fourteenth Amendment to the Constitution of the United States and for other purposes. April 20, 1871.

4. Where plaintiff suffered injury barred by federal Constitution he had remedy for damages under 1871 civil rights statue

### Los Angeles vs. Lyons
### 103.u.s. Supreme Ct.
### 1660, 461 u.s. (1983)

5. Where the district court has jurisdiction over subject matter, it has power to afford parties relief to which they are entitled on facts, applying rules of both law and equity.

### Zunamon vs. Brown
### c.a.ark. (1969) 418 f.2d.883.

### Jury demand prayer
### Prayer

Plaintiff demand trial by jury Fed.R. civil procedure 38. She requests judgment against the defendants for the damages described in this complaint:

1. And each of them for compensatory general and special damages in an amount to be determined

   A. By the trier of fact

   B. Interest on the damages awarded in this action as allowed by law.

   C. Plaintiff's cost to suit and reasonable attorney fees.

   D. All other relief that is just and proper by the court.

1. The right to trial by a jury shall be preserved under the Seventh Amend. 1791.

2. The right to a jury trial is also preserved in the state Constitution of the Commonwealth of Pennsylvania signed in Philadelphia by President Benjamin Franklin on July 15, 1776

3. Chapter 1. A declaration of the rights of the inhabitants of the Commonwealth or State of Pennsylvania.

4. Article XI. That in controversies respecting property and in suits between man and man the parties have a right to trial by jury, which ought to be held sacred.

### Chapter 11
### Plan or frame of government for the Commonwealth
### or State of Pennsylvania

5. Sect 25. Trials shall be by jury as heretofore and it is recommended to the legislature of this state to provide by law against every corruption of partiality in the choice, return or appointment juries.

6. The right to jury of controverted issues implies a trial by an impartial and qualified jury.

### Alexander v. R.d. Crier & Sons Co
### 181md.415,30,A.2d.757,759

7. Plaintiff stipulates that the jury consist of less than twelve members.

### Fed.R.civil p.48.

### Supreme Court Oct. (1879) ex parte Virginia

8. Sect. 5. The act of A. in selecting jurors was ministerial not judicial and although he derived his authority, from the state he was bound in the discharge of that duty to obey the federal Constitution and the laws passed in pursuance thereof.

   1. L&I and the Zoning Board of Adjustment and Board members violated plaintiff's rights under the XIV Amendment due process clause.

   2. Plaintiff was denied the right to use her property. This deprivation resulted from

   3. L&I and the Zoning Board of Adjustment and Board members. This deprivation was willful, oppressive and contrary and without any governmental decision and unlawful under state law. This is an:

   4. Invasion of plaintiff's property rights by actionable wrong.

### Labberton v. General cas. Co. of America
### 53 wash. 2d.180, 332,p.2d.250,252,254

5. Plaintiff's property includes not only ownership and possession but also the right of use and enjoyment for lawful purposes.

**Hoffman v. Kinealy. Mo. 389**
**S.w.2d. 745, 752**

6. This deprivation of right to use her property is action taken under color of state law, and without authority to do so without a state decision.

7. Moreover plaintiff's property is a single-family dwelling, which does not require a use registration permit or certificate or variance, and zoned in an R-10 district.

Defendants Address
Board Members Dept. of Licenses and Inspections

1. Lynette M. Brown-Sow, Chairwoman
2. Carol B. Tinari
3. Larissa Klevan, Planning Commission
4. Martin G. Bednarek
5. Anthony Lewis
6. Sam Staten, Jr.

1. John V. Wolfe Zoning Codes Compliance Specialist
2. Mary Jane McKinney Zoning Board Administrator
3. Christine Quinn Plans Examiner

**City of Philadelphia**
**Dept. of Licenses and Inspections**
**Municipal Services Bldg. Concourse**
**1401 John F. Kennedy Blvd.**
**Philadelphia, PA 19102**

**Board Members and Zoning Board Administrator**

**City of Philadelphia**
**Zoning Board of Adjustment**
**1401 JFK Blvd., 11th Floor**
**Philadelphia, PA 19102-2097**

All information is true to the best of my knowledge and belief

Respectfully Submitted,
Wessie Sims pro-se
4925 W. Stiles Street
City and County of Philadelphia
In the state of Pennsylvania 19132
Date: 9-25-2012

*Wessie Sims*
*pro-se*

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

RECEIVED
AUG 25 2011
CIVIL ADMINISTRATION

|  |  |
|---|---|
| **WESSIE SIMS,** | : |
| Appellant, | : **OCTOBER TERM, 2010** |
|  | : |
| v. | : |
|  | : **NO. 01619** |
| **PHILADELPHIA ZONING BOARD OF** | : |
| **ADJUSTMENT,** | : Re: 2103 N. Woodstock St. |
| Appellee, | : |
|  | : |

## O R D E R

AND NOW, this 24th day of _August_ 2011, after a Hearing and upon

consideration of Appellant's Statutory Appeal and any Answers in Opposition thereto, it

is hereby **ORDERED** and **DECREED** that the Appeal is **DENIED** and the decision of

the Zoning Board of Adjustment in this matter is affirmed.

**BY THE COURT:**

_Panepinto/J_

J.

Sims Vs Zoning Board Of-WSADN

10100161900015

**DOCKETED**

AUG 3 0 2011
K. PERMSAP
CIVIL ADMINISTRATION

**THE D'ARRO FIRM, P.C.**
BY: FRANCESCO G. D'ARRO, ESQUIRE
Identification No.: 88219
1325 Spruce St.
Philadelphia, PA 19107
215.546.6620
215.546-7795 (fax)
Darro.Law@verizon.net

Attorney for Appellant, Wessie Sims

| | | |
|---|---|---|
| WESSIE SIMS | : | **COURT OF COMMON PLEAS** |
| Appellant | : | **PHILADELPHIA COUNTY** |
| vs. | : | **CIVIL ACTION - LAW** |
| | : | |
| PHILADELPHIA ZONING | : | |
| BOARD OF ADJUSTMENT | : | **October Term, 2010** |
| And | : | |
| CITY OF PHILADELPHIA | : | **NO.: 01619** |
| | : | |
| Appellee | : | |

## APPEAL OF DECISION OF PHILADELPHIA
## ZONING BOARD OF ADJUSTMENT

### I.   Statement of Jurisdiction

This is an appeal from a decision of the Philadelphia Zoning Board of Adjustment,

denying Appellant Wessie Sims' application for a variance.  This Court has jurisdiction pursuant

to 42 Pa.C.S.A. § 933 and Philadelphia Zoning Code § 14-1807.


### II.   Statement of Questions Involved

A.  Whether the Philadelphia Zoning Board of Adjustment erred in denying a variance to
Appellant Wessie Sims?

Suggested Answer: Yes.

# THE D'ARRO FIRM, P.C.
..........................................Attorneys at Law
The Biddle House
1325 SPRUCE STREET
PHILADELPHIA, PA 19107
215.546.6620  215.546.7795 Fax
E-mail: Darro.law@verizon.net

**Francesco G. D'Arro**
Also Admitted in U.S. District Court
for the E.D. & M.D. of Pennsylvania

Offices:
Philadelphia County
Montgomery County

September 2, 2011

Wessie Sims
4925 W. Stiles St.
Philadelphia, PA 19131

> **RE:** *Wessie Sims vs. Zoning Board of Adjustment*
> *& City of Philadelphia*
> *October Term, 2010; No. 01619*

Dear Ms. Sims:

Enclosed please find a copy of the Judge's Decision/Order denying your appeal. I am sure that you are disappointed as I am that the Judge has ruled in favor of the Zoning Board. In my opinion, the decision is not legally correct.

You have the right to file an appeal from this Order to the Commonwealth Court of Pennsylvania. Your appeal must be filed within 30 days from the August 24th Order. Accordingly, **your appeal must be filed by no later than Friday, September 23, 2011.** If you wish to discuss this option with me, please call me as soon as possible.

Feel free to contact me at anytime, as always, if you have any questions or concerns about this or any other legal matter. I appreciate your confidence and goodwill.

Sincerely,

FRANCESCO G. D'ARRO, ESQ.

enclosure



# THE D'ARRO FIRM, P.C.
...........................................Attorneys at Law
The Biddle House
1325 SPRUCE STREET
PHILADELPHIA, PA 19107
215.546.6620  215.546.7795 Fax
E-mail: Darro.law@verizon.net

**Francesco G. D'Arro**
Also Admitted in U.S. District Court
for the E.D. & M.D. of Pennsylvania

Offices:
Philadelphia County
Montgomery County

March 4, 2011

Ms. Wessie Sims
2103 N. Woodstock St.
Philadelphia, PA 19121

**RE:     Sims' Appeal of ZBA Decision**

Dear Ms. Sims:

Yesterday afternoon I filed your brief in support of your appeal of the Zoning Board decision. A copy of my brief is enclosed for your review.

The City's reply brief is due by no later than April 4th. I expect that Judge Paul Panepinto will schedule an oral argument in the Common Pleas Court sometime around the middle or end of May. As soon as I receive any significant information from the City or the Court, I will promptly share that with you. In the meantime, as always, please feel free to contact me if you have any questions or concerns.

Thank you for your confidence.

Sincerely,

FRANCESCO G. D'ARRO, ESQ.

enclosure

CITY OF PHILADELPHIA
ZONING BOARD OF ADJUSTMENTS
WEDNESDAY, MARCH 3RD, 2010

MINUTES OF FORMAL HEARING
- - -

BOARD MEMBERS:   LYNETTE M. BROWN-SOW, Chairwoman
PETER GONZALES, Board Member
CAROL B. TINARI, Board Member
ANTHONY LEWIS, Board Member
MARTIN G. BEDNAREK, Board Member

ALSO PRESENT:   Larissa Klevan, Planning Commission

LOCATION:   1515 Arch Street, 18th Floor
Philadelphia, Pennsylvania

PROPERTY:   2103 North Woodstock Street
Philadelphia, Pennsylvania

APPEAL NUMBER:   234786

REPORTED BY:   Krista Morici, Shorthand Reporter

- - - -

CLASS ACT REPORTING AGENCY
REGISTERED PROFESSIONAL REPORTERS
1420 Walnut Street   133H Gaither Drive
Suite 1200   Mt. Laurel, NJ 08054
Philadelphia, PA 19103   (856) 235-5108

abade992-6847-4b7f-8680-72f03bd6aeb8

1  period.

2            CHAIRWOMAN BROWN-SOW:  Planning commission?

3            MS. KLEVAN:  Madam Chairwoman and members

4  of the Board, this property is indicated for

5  residential use in the comprehensive plan.  Planning

6  commission staff feels this application represents an

7  overuse of the property.  We recommend the requested

8  variance not be granted.

9            CHAIRWOMAN BROWN-SOW:  We're going to have

10  to deliberate on this.  I'll tell you now our concerns

11  are more than three people.  And the other issue that

12  I have is there's no exits on the second and third

13  floor and if something happens how do people get out.

14  We'll discuss it and then we'll let you know in

15  writing.

16            MEMBER LEWIS:  There's also concern about

17  the bathroom, there's only one bathroom for five

18  people.  They all work, what time will they start

19  getting ready to get to work.  That's an issue for me.

20                              -   -   -

21            (Whereupon, the hearing concluded at

22  approximately 6:05 p.m.)

23                              -   -   -

24

abade992-6847-4b7f-8680-72f03bd6aeb8

Case ID: 101001619

1                    CHAIRWOMAN BROWN-SOW:  Name and address for

2      the record.

3                    MR. SIMS:  Wessie Sims, 2103 North

4      Woodstock Street.

5                    CHAIRWOMAN BROWN-SOW:  Please be quiet.

6                    Okay.  Is this a two-story house or a

7      three-story house?

8                    MS. SIMS:  Three.

9                    CHAIRWOMAN BROWN-SOW:  It's a private

10     residential house?

11                   THE WITNESS:  Yes.

12                   CHAIRWOMAN BROWN-SOW:  What's in there now?

13                   THE WITNESS:  There's five rooms, but

14     there's three people in there.

15                   CHAIRWOMAN BROWN-SOW:  So is this a

16     legalization?

17                   THE WITNESS:  No, there were three

18     people -- they told me I could keep three people

19     but --

20                   CHAIRWOMAN BROWN-SOW:  You have three in

21     there and you want five?

22                   THE WITNESS:  Yes, the other two on the

23     third floor.

24                   CHAIRWOMAN BROWN-SOW:  Is this a rooming

Case ID: 101001619

1  first floor.

2                CHAIRWOMAN BROWN-SOW:  Three exits.

3                THE WITNESS:  On the side as you go out the

4  alleyway.

5                CHAIRWOMAN BROWN-SOW:  There's a exit and

6  there is a back exit and a front exit?

7                THE WITNESS:  Yes.

8                CHAIRWOMAN BROWN-SOW:  And what about the

9  second floor, how do you get out if there's a fire?

10                THE WITNESS:  There's a roof, there's a

11  roof there.  It's -- you come right out on the roof.

12                CHAIRWOMAN BROWN-SOW:  How do you get off

13  the roof?

14                THE WITNESS:  Well, it's not that high.

15                CHAIRWOMAN BROWN-SOW:  And the third floor,

16  how do you get out of there?

17                THE WITNESS:  The roof is on the third

18  floor.  That's where the roof is at on the third

19  floor.

20                CHAIRWOMAN BROWN-SOW:  Have you met with

21  your community?

22                THE WITNESS:  Yes, I did.

23                CHAIRWOMAN BROWN-SOW:  This is a petition

24  for a rooming house and it doesn't say whether this is

1            CHAIRWOMAN BROWN-SOW:  Name and address for

2    the record.

3            MR. SIMS:  Wessie Sims, 2103 North

4    Woodstock Street.

5            CHAIRWOMAN BROWN-SOW:  Please be quiet.

6            Okay.  Is this a two-story house or a

7    three-story house?

8            MS. SIMS:  Three.

9            CHAIRWOMAN BROWN-SOW:  It's a private

10   residential house?

11           THE WITNESS:  Yes.

12           CHAIRWOMAN BROWN-SOW:  What's in there now?

13           THE WITNESS:  There's five rooms, but

14   there's three people in there.

15           CHAIRWOMAN BROWN-SOW:  So is this a

16   legalization?

17           THE WITNESS:  No, there were three

18   people -- they told me I could keep three people

19   but --

20           CHAIRWOMAN BROWN-SOW:  You have three in

21   there and you want five?

22           THE WITNESS:  Yes, the other two on the

23   third floor.

24           CHAIRWOMAN BROWN-SOW:  Is this a rooming

1                          CERTIFICATE

2

3          I, Krista Morici, Professional Court Reporter,

4     certify that the foregoing is a true and accurate

5     transcript of the proceedings which were held at the

6     time, place and on the date hereinbefore set forth.  .

7                I further certify that I am neither attorney

8     nor counsel for, not related to or employed by, any of

9     the parties to the action in which these proceedings

10    were taken.  Further, that I am not a relative or

11    employee of any attorney or counsel employed in this

12    case, nor am I financially interested in this action.

13

14

15
      Krista Morici
16    Professional Shorthand Reporter

17

18

19

20

21

22

23

24

abade992-6847-4b7f-8680-72f03bd6aeb8

Darin J. Steinberg, Esquire
1258 Appalachian Road
Ambler, PA 19002
Attorney Identification No. 78747
(215) 470-3099
djs@darinsteinberglaw.com

Attorney for the Zoning Board of Adjustment

Filed and attested by
PROTHONOTARY
07 FEB 2011 05:58 pm
DISTRICT OF

| | |
|---|---|
| *Appeal of:* | : **IN THE COURT OF COMMON PLEAS** |
| | : |
| | : |
| **Sims, Wessie** | : **Civil Division – Special Docket Program** |
| | : |
| | : |
| **Appellant** | : |
| | : |
| *From the decision of:* | : |
| | : |
| **Philadelphia Zoning** | : **October Term 2010** |
| **Board of Adjustment.** | : |
| | : **No. 01619** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## OF THE PHILADELPHIA ZONING BOARD OF ADJUSTMENT

     This appeal is taken from a Decision of the Zoning Board of Adjustment of the City of Philadelphia ("Zoning Board" or "Board") at Calendar No. 10915. The Board held a public hearing on March 3, 2010, and denied the requested variance to use the property located at 2103 N. Woodstock Street, Philadelphia, PA (the "Subject Property") as a rooming house for a total of five (5) rooming units with a maximum of five (5) occupants within an existing three-story attached building (all person capable of self preservation and self sustaining; no person under the jurisdiction of any court system). In support of its decision, the Board makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. On December 1, 2009, Tamela Prather, on behalf of the owner Wessie Sims ("Owner") applied to the Philadelphia Department of Licenses and Inspections ("L&I" or "Department") for a zoning permit to use the Subject Property as a rooming house for a total of five (5) rooming units with a maximum of five (5) occupants within an existing three-story attached building (all persons capable of self preservation and self sustaining;

1

no person under the jurisdiction of any court system). *See* Application for Zoning/Use Registration Permit No. 234786.

2.  L&I determined that the proposed use of the Subject Property as a rooming house for five (5) occupants was prohibited under Section 14-205 of the Philadelphia Zoning Code ("Zoning Code" or "Code") because the minimum rear yard area for five families is 544 square feet and the Owner is only proposing 230 square feet. The Department accordingly refused Owner's permit application on January 20, 2010. *See* Notice of Refusal of Permit Application No. 234786.

3.  Applicant appealed L&I's refusal to the Zoning Board on January 21, 2010. *See* Petition of Appeal, Calendar No. 10915.

4.  A public hearing before the Zoning Board was held on March 3, 2010 (the "Hearing"). There were at least four members of the Board present at the Hearing thus constituting a quorum. At the Hearing's conclusion, the Board informed the Owner that it would deliberate and render a decision later. *See* 3/3/10 N.T. at 8. Subsequent to the Hearing, Owner submitted a drawing of the location of the proposed new bathroom on the first floor of the Subject Property as well as sketches showing a proposed fire exit from the second and third floors of the Subject Property all of which were received by the Board on May 5, 2010. On September 15, 2010, the Board, in a two to one decision, voted to deny the requested variance. *See* Notice of Decision re Calendar No. 10915 dated September 15, 2010. Thereafter, the Board received a letter from Francesco G. D'Arro, Esquire requesting a reconsideration of the Board's denial of the requested variance. Mr. D'Arro's request was denied by the Board on October 12, 2010.

5.  The Subject Property is located in an R-10 Residential District. *See* Notice of Refusal of Permit Application No. 234786 and Photos of Subject Property. At the Hearing, the Owner submitted photos of the Subject Property, a petition of support of the requested variance and an existing conditions plan dated September 5, 2009.

6.  At the Hearing, Owner testified that the Subject Property was a private residential house that was currently being used as a rooming house for three occupants. *See* 3/3/10 N.T. at 2. The three occupants reside in the three units located on the second floor of the Subject Property. *See* 3/3/10 N.T. at 2. Owner stated that she would like to add two additional occupants who would live in the two units located on the third floor. *See* 3/3/10 N.T. at 2. There is a living room, kitchen and dining room on the first floor. *See* 3/3/10 N.T. at 3. There is only one bathroom for the entire house that is shared by all occupants. *See* 3/3/10 N.T. at 3. On each side of the Subject Property are empty lots. *See* 3/3/10 N.T. at 4. There are three exits on the first floor of the Subject Property. *See* 3/3/10 N.T. at 5. There are no exits on the second or third floors of the Subject Property. *See* 3/3/10 N.T. at 6.

7.  The Owner testified that she has run the Subject Property as a rooming house for seven years. *See* 3/3/10 N.T. at 7.

2   *Code 14-205 next page*
*R-10 District*

ZONING AND PLANNING

*Code*;
§ 14-205

| | Denotes use not permitted, building type not permitted or zoning requirements not applicable | | | | |
|---|---|---|---|---|---|
| **DISTRICT** | **R-9** | **R-9A** | **R-10** | **R-10A** | **R-10B** |
| **PERMITTED USES** | | | | | |
| SINGLE FAMILY | Y | Y | Y | Y | Y |
| DUPLEX / TWO FAMILY | Y | | Y | | Y |
| MULTI-FAMILY | Y | | Y | | |
| RESIDENTIAL RELATED USES | Y | Y | Y | Y | |
| NON-RESIDENTIAL USES | Y | Y | Y | Y | |
| OTHER PERMITTED USES | | | | | Y |
| **PERMITTED BUILDING TYPE** | | | | | |
| DETACHED | Y | Y | Y | Y | Y |
| SEMI-DETACHED | Y | Y | Y | Y | Y |
| ATTACHED | Y | Y | Y | Y | Y |
| MULTIPLE BUILDINGS / LOT | | | | | Y |
| **ZONING REQUIREMENTS** | | | | | |
| MINIMUM LOT WIDTH (FT.) | 16 | 16 | 16 | 16 | 16 |
| MINIMUM LOT AREA (SQ. FT.) | 1,440 | 1,440 | 1,440 | 1,440 | 1,440 |
| MINIMUM OPEN AREA (%) OF LOT | 30; 20 on corner lot | 30; 20 on corner lot | 30; 20 on corner lot | 30; 20 on corner lot | 1 sty bldg: 20 2 or more stories: 1st floor 0, above 1st floor 20 and see §14-206(1)A(2) |
| SET-BACK LINE / FRONT YARD MINIMUM DEPTH (FT.) | 8 | 8 | | | |
| **SIDE YARD MINIMUM WIDTH:** | | | | | |
| Detached single family dwelling (ft.) | 2 @ 5 | 2 @ 5 | 2 @ 5 | 2 @ 5 | 2 @ 5 |
| Detached single family dwelling – corner lot (ft.) | 5 | 5 | 5 | 5 | 5 |
| Semi-detached single family dwelling (ft.) | 5 | 5 | 5 | 5 | 5 |
| Attached single family dwelling (ft.) | 0; 5 if used | 0; 5 if used | 0; 5 if used | 0; 5 if used | 0; 5 if used |
| Detached duplex dwelling (ft.) | 2 @ 5 | | 2 @ 5 | | 2 @ 5 |
| Detached duplex dwelling – corner lot (ft.) | 5 | | 5 | | 5 |
| Semi-detached duplex dwelling (ft.) | 5 | | 5 | | 5 |
| Attached duplex dwelling (ft.) | 0; 5 if used | | 0; 5 if used | | 0; 5 if used |
| Multiple dwelling (ft.) | 0; 8 if used | | 0; 8 if used | | |
| Building other than dwellings (ft.) | 2 @ 8 | 2 @ 8 | 2 @ 8 | 2 @ 8 | |
| Building other than dwelling, corner lot (ft.) | 8 | 8 | 8 | 8 | |
| REAR YARD MINIMUM DEPTH (FT.) | 9 | 9 | 9 | 9 | 0; 5 if used |
| REAR YARD MINIMUM AREA (SQ. FT.) | 144 for the 1st family + 100 per add'l family | 144 | 144 for the 1st family + 100 per add'l family | 144 | |
| BUILDING HEIGHT LIMIT – DWELLING (FT.) | 35 | 35 | 35 | 35 | 50 |
| BUILDING HEIGHT LIMIT – NON-DWELLING (FT.) | 35 + add'l height [1] | 35 + add'l height [1] | 35 + add'l height [1] | 35 + add'l height [1] | |
| MAXIMUM NO. OF STORIES – DWELLING | 3 | 3 | 3 | 3 | 5 |
| OFF-STREET PARKING | | See Chapter 14-1400 of this Title. | | | 1 space per unit [1] |

8. Zenobia Harris from Councilman Darrell Clark's office testified that she acknowledged that the petition presented at the Hearing was in support of the variance. However, she testified further as follows: "rooming houses is not something we necessarily tend to support. We're looking to reestablish the community as far as, you know, homeownership or people who are more stable who tend to be there a long time." *See* 3/3/10 N.T. at 7.

9. The Philadelphia City Planning Commission recommended denial of the requested variance because the proposed use of the Subject Property represents "an overuse of the property." *See* 3/3/10 N.T. at 8.

## CONCLUSIONS OF LAW

1. According to §14-205 of the Zoning Code, the proposed use of the Subject Property as a rooming house for five occupants is not permitted in the R-10 Residential District because the Subject Property does not comply with the minimum rear yard area requirements for a five-family structure. The minimum rear yard area for a five families is 544 square feet whereas the Subject Property only has 230 square feet, thus requiring a variance from §14-205.

2. Pursuant to §14-1801(1)(c) of the Zoning Code, the Zoning Board may, after public notice and public hearing, authorize upon appeal in specific cases such variance from the terms of the Code as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of the Code would result in unnecessary hardship, and so that the spirit of the Code shall be served and substantial justice done, subject to such terms and conditions as the Zoning Board may decide.

3. Section 14-1802(1) and (2) set forth the criteria the Board must consider in deciding whether to grant a variance. These include, without limitation, the following:

    (a) that because of the particular physical surrounding, shape or topographical conditions of the specific structure or land involved, a literal enforcement of the provisions of [the Zoning Code] would result in unnecessary hardship;

    (b) that the conditions which the appeal for a variance is based are unique to the property for which the variance is sought;

    (c) that the variance will not substantially or permanently injure the appropriate use of adjacent conforming property; [and]

    (d) that the special conditions or circumstances forming the basis for the variance did not result from the actions of the applicant;

4. The Supreme Court of Pennsylvania has defined a variance as "a departure from the exact provisions of a zoning ordinance ... granted where a strict enforcement of the literal terms of the ordinance will result in unnecessary hardship upon a particular property over and above the hardship that may be

3

imposed . . . on all properties in that community." *Brennan v. Board of Adjustment*, 409 Pa. 376, 197 A.2d 180 (1963).

5.  The burden of proof in obtaining a variance is upon the landowner. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983), *Yeager v. Zoning Hearing Board*, 779 A.2d 595 (Pa. Cmwlth. Ct. 2001).

6.  To establish entitlement to a variance, an applicant must show an unnecessary hardship resulting from the property's unique physical conditions or circumstances; that such hardship is not self-imposed by the applicant; that granting the variance would not adversely affect the public health, safety or welfare; and that the variance, if granted, would represent the minimum necessary to afford relief. *Alpine, Inc. v. Abington Twp. Zoning Hearing Board*, 654 A.2d 186 (Pa. Cmwlth. 1995).

7.  "Where . . . the property has actually been used for a permitted purpose, the owner does not suffer unnecessary hardship required for granting a variance." *Miller v. Zoning Hearing Board of the Ross Township*, 167 Pa. Commw. 194, 647 A.2d 966 (Pa. Cmwlth. 1994). Unnecessary hardship is established only where it is shown that compliance with the zoning ordinance could render the property practically useless. *Ignelzi v. Zoning Board of Adjustment of the City of Pittsburgh, 61 Pa. Commw. 101, 433 A.2d 158 (Pa. Cmwlth. 1981).*" *Evans v. Zoning Hearing Board*, 732 A.2d 686, 691 (Pa. Cmwlth. Ct. 1999).

8.  There is no evidence of record to support a finding of unnecessary hardship. In fact, there was no testimony whatsoever that addressed the criteria the Board must consider in granting a variance. As a result, Owner failed to overcome her burden of proof to establish a variance.

9.  There was not sufficient evidence presented to show that the proposed use of the Subject Property was necessary to the Subject Property's continued use as a rooming house for three occupants or some other permitted use. Refusal to grant the requested variance does not render the Subject Property practically valueless or less suitable for a permitted purpose.

10. Moreover, as stated by the Planning Commission at the Hearing, allowing the Owner to use the Subject Property as a rooming house for five occupants would represent an overuse of the Subject Property.

11. For the foregoing reasons, the Board concludes that the requested variance should be denied.

**[Signature and Vote of the Board Appear on the Next Page.]**

4

### C. The Requested Variance Would Not Have an Adverse Effect on the Community, as it is a Minimal Variance Requiring no Physical Modification to the Property.

Ms. Sims is merely seeking a dimensional variance so that she can use her property in a way that is authorized in her area. This is a minimal request for a variance, as suggested by *Hertzberg*:

> When seeking a dimensional variance within a permitted use, the owner is asking only for a *reasonable* adjustment of the zoning regulations in order to utilize the property in a manner *consistent* with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation."

721 A.2d at 48 (*emphasis added*).

Despite multi-family dwellings being allowed in Ms. Sims' area, the Philadelphia City Planning Commission was not in favor of Ms. Sims' request because such use would allegedly be "an overuse of the property." (3/3/10 N.T. at 8, Exhibit "A"). But using her home as a rooming house is in fact an appropriate use of the property as it is located in an R-10 district. In an R-10 district, the Code allows for single family dwellings, duplexes, and multi-family dwellings which are detached, semi-detached, or attached. § 14-205. Therefore the property is in an area where multiple uses of properties are allowed, so her proposed use should not be unusual or in any way inappropriate for the neighborhood.

Ms. Sims is merely proposing to fill all five bedrooms of a five bedroom house. The proposed use of the home would not cause any significant change or harm to the neighborhood. Ms. Sims' plan to house two additional people would hardly cause increased traffic or other problems that a larger rental property might cause. There is no suggestion of making any physical alterations to the property, which would be a more extreme request for a variance. The

residential structure, for a rooming house that does not have a private bathroom for each bedroom, there must be: A minimum of one water closet lavatory and bathroom or shower shall be provided with access from a common hallway for each of the occupants or fractions thereof. Such facilities shall not be more than one story removed from the occupants intended to share them therefore plaintiffs property is in compliance with code pm-405.1.2.

When plaintiff hired contractor to do the drawings she was not aware that code pm-405.1.2 did not require an additional bathroom the statement was made by Anthony Lewis board member complaining that the property in question had only one bathroom she relied on and acted upon the representation plaintiff believed the representation to be true, it was false and Anthony Lewis knew it was false. Copy of bathroom drawing attached.

Where chairlady Brown-Sow complained of exit. Where a building with one exit was constructed in conformance with the building code in effect at the time the building was constructed, the single exit is acceptable provided it is in accordance with one of the following conditions.

1.  A residential building not exceeding six stories above grade

2.  A residential building to exceeding 3 stories above grade.

3.  A building equipped with a fire suppression system and fire alarm system throughout,

    The property in question has not one, but three exits. It is a residential building not exceeding three stories above grade.

1   period.

2          CHAIRWOMAN BROWN-SOW:  Planning commission?

3          MS. KLEVAN:  Madam Chairwoman and members

4   of the Board, this property is indicated for

5   residential use in the comprehensive plan.  Planning

6   commission staff feels this application represents an

7   overuse of the property. We recommend the requested

8   variance not be granted.

9          CHAIRWOMAN BROWN-SOW:  We're going to have

10   to deliberate on this.  I'll tell you now our concerns

11   are more than three people.  And the other issue that

12   I have is there's no exits on the second and third

13   floor and if something happens how do people get out.

14   We'll discuss it and then we'll let you know in

15   writing.

16          MEMBER LEWIS:  There's also concern about

17   the bathroom, there's only one bathroom for five

18   people.  They all work, what time will they start

19   getting ready to get to work.  That's an issue for me.

20                 -  -  -

21          (Whereupon, the hearing concluded at

22   approximately 6:05 p.m.)

23                 -  -  -

24

abade992-6847-4b7f-8680-72f03bd6aeb8

Case ID: 101001619

While a quorum of four members of the Board attended the hearing, a majority of *those four* needed to vote in order for the Board to take action. The Board seems to have attempted to get around this due to the fact that another member of the Board voted, giving them a total of three votes on the variance, but that vote failed to meet the requirements set forth in the Code. As such, the Board did not have the authority to make a decision on this matter.

## VI. __Relief__

Based on the foregoing, Appellant Wessie Sims' application for a variance from the Philadelphia Zoning Code should be granted. Ms. Sims respectfully requests that this Honorable Court vacate the decision by the Philadelphia Zoning Board of Adjustment and grant the requested variance.

THE D'ARRO FIRM, P.C.

BY: _____/s/_____

March 3, 2011

FRANCESCO G. D'ARRO, ESQUIRE
Attorney for Appellant, Wessie Sims
1325 Spruce Street
Philadelphia, PA 19107
215.546.6620

2. A residential building, other than Group R-3, not exceeding 3 stories above grade.

§ F-4604.24.1. Ms. Sims' property is indisputably in compliance with this provision. The building is not zoned as R-3, it is zoned as R-10. It is a three story building having not one, but three exits. (3/3/10 N.T. at 5-6). Notwithstanding the fact that the building is in compliance with the Code, Ms. Sims has proposed to install fire escapes for the second and third stories of the building.

### E. The Board's Decision to Deny the Variance was not a Valid Vote.

Finally, the Board's vote to deny the variance is invalid. The Philadelphia Zoning Board has set requirements for valid actions by the Board, including:

> (2) Four members of the Board shall constitute a quorum for any public hearing required under this Title.
> (3) The concurring vote of a majority of the Board, present and constituting a quorum at a public hearing, shall be required for action by the Board.

§ 14-1805. At the March 3, 2010 hearing, four members of the Board were present, constituting the minimum requisite quorum for the hearing to proceed. This means that a minimum of three members of the Board who were present at the hearing needed to vote on the variance. This did not occur.

Of the four present at the hearing, only Lynette Brown-Sow and Carol Tinari voted. Neither Martin G. Bednarek nor Anthony Lewis, who were present at the hearing, voted. The only other vote came from Sam Staten, Jr. who merely voted based on a reading of the hearing transcript, and was not actually in attendance at the hearing. The final member of the Board, Peter Gonzales, did not attend the hearing or vote. The vote of the Board is attached on page 5 to **Exhibit "B"**.

Respectfully submitted,

Mary Jane McKinney
Zoning Board Administrator

## VOTE OF THE BOARD

Lynette Brown-Sow

Yes with proviso - Five occupants with roll down window ladder

Carol Tinari

No

Sam Staten, Jr.

No (Read Transcript)

Martin G. Bednarek

Present at Hearing but did not vote

Anthony Lewis

Present at Hearing but did not vote

Peter Gonzales

Not present at Hearing and did not vote

5

Case ID: 101001619

While a quorum of four members of the Board attended the hearing, a majority of *those four* needed to vote in order for the Board to take action. The Board seems to have attempted to get around this due to the fact that another member of the Board voted, giving them a total of three votes on the variance, but that vote failed to meet the requirements set forth in the Code. As such, the Board did not have the authority to make a decision on this matter.

## VI.    **Relief**

Based on the foregoing, Appellant Wessie Sims' application for a variance from the Philadelphia Zoning Code should be granted. Ms. Sims respectfully requests that this Honorable Court vacate the decision by the Philadelphia Zoning Board of Adjustment and grant the requested variance.

THE D'ARRO FIRM, P.C.

BY: _____/s/_____

March 3, 2011
FRANCESCO G. D'ARRO, ESQUIRE
Attorney for Appellant, Wessie Sims
1325 Spruce Street
Philadelphia, PA 19107
215.546.6620

problems and because there is community support for what she is doing there is no expectation of problems in the future.

### D. The Board Denied the Variance for Reasons Unrelated to the Zoning Code.

The application for a zoning variance was in reference to the requisite size of a rear yard for a five-family structure. The Board held a public hearing on this application. Yet, at the hearing the Board made no mention of the size of the yard. Instead it focused on bathrooms and fire escapes, neither of which are – nor were alleged to be – in violation of the Code.

There are requirements concerning the number of bathrooms in a residential structure. For a rooming house that does not have a private bathroom for each bedroom, there must be:

> A minimum of one water closet, lavatory and bathtub or shower shall be provided with access from a common hallway for each six occupants or fraction thereof. Such facilities shall not be more than one story removed from the occupants intended to share them.

Philadelphia Building Construction and Occupancy Code § PM-405.1.2. Ms. Sims' proposed use of her property is for five individuals. This means that she is well within the requirement for the number of bathrooms for her house, as one bathroom is required for six individuals. And, because the bathroom is located on the second floor, it is within one story of both the second and third floor bedrooms. Despite the fact that Ms. Sims is not required to have additional bathrooms in her house, due to the concerns of the Board she has presented plans to install a second bathroom.

The requisite number of fire escapes is defined in the Philadelphia Building Construction and Occupancy Code, which provides in pertinent part:

> Where a building with one exit was constructed in conformance with the building code in effect at the time the building was constructed, the single exit is acceptable provided it is in accordance with one of the following conditions:
> ...

problems and because there is community support for what she is doing there is no expectation

of problems in the future.

### D. The Board Denied the Variance for Reasons Unrelated to the Zoning Code.

The application for a zoning variance was in reference to the requisite size of a rear yard

for a five-family structure. The Board held a public hearing on this application. Yet, at the

hearing the Board made no mention of the size of the yard. Instead it focused on bathrooms and

fire escapes, neither of which are – nor were alleged to be – in violation of the Code.

There are requirements concerning the number of bathrooms in a residential structure.

For a rooming house that does not have a private bathroom for each bedroom, there must be:

> A minimum of one water closet, lavatory and bathtub or shower shall be provided
> with access from a common hallway for each six occupants or fraction thereof.
> Such facilities shall not be more than one story removed from the occupants
> intended to share them.

Philadelphia Building Construction and Occupancy Code § PM-405.1.2. Ms. Sims' proposed

use of her property is for five individuals. This means that she is well within the requirement for

the number of bathrooms for her house, as one bathroom is required for six individuals. And,

because the bathroom is located on the second floor, it is within one story of both the second and

third floor bedrooms. Despite the fact that Ms. Sims is not required to have additional bathrooms

in her house, due to the concerns of the Board she has presented plans to install a second

bathroom.

The requisite number of fire escapes is defined in the Philadelphia Building Construction

and Occupancy Code, which provides in pertinent part:

> Where a building with one exit was constructed in conformance with the building
> code in effect at the time the building was constructed, the single exit is
> acceptable provided it is in accordance with one of the following conditions:
> …

residential structure, for a rooming house that does not have a private bathroom for each bedroom, there must be: A minimum of one water closet lavatory and bathroom or shower shall be provided with access from a common hallway for each of the occupants or fractions thereof. Such facilities shall not be more than one story removed from the occupants intended to share them therefore plaintiffs property is in compliance with code pm-405.1.2.

When plaintiff hired contractor to do the drawings she was not aware that code pm-405.1.2 did not require an additional bathroom  the statement was made by Anthony Lewis board member  complaining that the property in question had only one bathroom she relied on and acted upon the representation plaintiff believed the representation  to be true, it was false and Anthony Lewis knew it was false. Copy of bathroom drawing attached.

Where chairlady Brown-Sow complained of exit. Where a building with one exit was constructed in conformance with the building code in effect at the time the building was constructed, the single exit is acceptable provided it is in accordance with one of the following conditions.

1.  A residential building not exceeding six stories above grade

2.  A residential building to exceeding 3 stories above grade.

3.  A building equipped with a fire suppression system and fire alarm system throughout,

    The property in question has not one, but three exits. It is a residential building not exceeding three stories above grade.

## C. The Requested Variance Would Not Have an Adverse Effect on the Community, as it is a Minimal Variance Requiring no Physical Modification to the Property.

Ms. Sims is merely seeking a dimensional variance so that she can use her property in a

way that is authorized in her area. This is a minimal request for a variance, as suggested by

*Hertzberg*:

> When seeking a dimensional variance within a permitted use, the owner is asking only for a *reasonable* adjustment of the zoning regulations in order to utilize the property in a manner *consistent* with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation."

721 A.2d at 48 (*emphasis added*).

Despite multi-family dwellings being allowed in Ms. Sims' area, the Philadelphia City

Planning Commission was not in favor of Ms. Sims' request because such use would allegedly

be "an overuse of the property." (3/3/10 N.T. at 8, Exhibit "A"). But using her home as a

rooming house is in fact an appropriate use of the property as it is located in an R-10 district. In

an R-10 district, the Code allows for single family dwellings, duplexes, and multi-family

dwellings which are detached, semi-detached, or attached. § 14-205. Therefore the property is

in an area where multiple uses of properties are allowed, so her proposed use should not be

unusual or in any way inappropriate for the neighborhood.

Ms. Sims is merely proposing to fill all five bedrooms of a five bedroom house. The

proposed use of the home would not cause any significant change or harm to the neighborhood.

Ms. Sims' plan to house two additional people would hardly cause increased traffic or other

problems that a larger rental property might cause. There is no suggestion of making any

physical alterations to the property, which would be a more extreme request for a variance. The

bedrooms. (3/3/10 N.T. at 3)(The ZBA Hearing Transcript is attached hereto as **EXHIBIT "A"**). The property is between two empty lots, both of which used to be houses and are not owned by Ms. Sims. (3/3/10 N.T. at 4, Exhibit "A").

Due to economic hardship, for the past seven years Ms. Sims has been renting out three of the five bedrooms in the house. (3/3/10 N.T. at 7, Exhibit "A"). Ms. Sims seeks to rent out the remaining two bedrooms as well. During the March 3, 2010 hearing Ms. Sims testified that in the seven years she has been running her property as a rooming house she has never had any problems. (3/3/10 N.T. at 7). Ms. Sims also presented the Board with a community petition showing support of nineteen community members. (3/3/10 N.T. at 6-7).

At the March 3, 2010 hearing, four members of the Board were present, but only two of them later participated in the vote. During the hearing, the Board made clear its main concerns were the lack of fire escapes on the upper floors and the fact that there is only one bathroom in the house. (3/3/10 N.T. at 3-4, 5-6, 8). Subsequent to the hearing, Ms. Sims submitted documentation of plans to install fire exits and an additional bathroom, in order to resolve the concerns expressed by the Board – despite these building additions not being required by the Philadelphia Zoning Code.

## IV. Summary of the Argument

Ms. Sims should be granted a variance because maintaining the rear yard requirement imposed by the Philadelphia Zoning Code is an unnecessary hardship. Meeting the dimensional requirement for the yard would be an unreasonable financial burden upon Ms. Sims when she is making a minimal request for relief in her desire to use each of the bedrooms that already exist in her house. The Board erred in denying this variance to Ms. Sims. The basis for the decision stems from an invalid vote of the Board, which was focused on their own personal opinions

# NOTICE OF DECISION

City of Philadelphia
ZONING BOARD OF ADJUSTMENT
1401 J. F. K. Blvd. - 11th Floor
Philadelphia, PA 19102-2097

APPLICATION #: 234786          DATE OF DECISION: 09/15/10          CAL #: 10915

ATTORNEY:

APPLICANT: WESSIE SIMS
4925 WEST STILES STREET
PHILADELPHIA PA 19132

OWNER: WESSIE SIMS
4925 WEST STILES STREET
PHILADELPHIA PA 19132

PREMISES: 2103 N WOODSTOCK ST

## THIS IS NOT A PERMIT

The Zoning Board of Adjustment, having held a public hearing in the above numbered appeal, after proper public notice thereof, has decided that the request for (a) USE VARIANCE(S) is:

### DENIED

ALL VARIANCES / CERTIFICATES / SPECIAL USE PERMITS GRANTED HEREIN ARE SUBJECT TO THE FOLLOWING CONDITIONS:

1. **A PERMIT MUST BE OBTAINED FROM THE DEPARTMENT OF LICENSES AND INSPECTIONS, PUBLIC SERVICE CONCOURSE, 1401 J. F. K. BLVD., WITHIN ONE CALENDAR YEAR FROM THE DATE OF THIS DECISION.**
2. ALL CONSTRUCTION MUST BE IN ACCORDANCE WITH PLANS APPROVED BY THE ZONING BOARD OF ADJUSTMENT.
3. A NEW APPLICATION AND NEW PUBLIC HEARING WILL BE REQUIRED FOR FAILURE TO COMPLY WITH THE FOREGOING CONDITIONS.
4. FURTHER CONDITIONS:

By Order of the ZONING BOARD OF ADJUSTMENT
CAROL B. TINARI, Sec.

NOTE: All appeals from this decision are to be taken to the Court of Common Pleas of Philadelphia County within 30 days from the date of this decision.

81-2000 (8/90)

# MR. CONTRACTOR, INC.

## Fourth Generation Family Business

2628-34 FRANKFORD AVENUE • PHILADELPHIA, PENNSYLVANIA 19125

PHONE (215) 423-5525          FAX (215) 423-9662

Mrs. Sims

2103 N Woodstock

Phla Pa 19121

← party
Wall

Add powder room

To living room 3'6" x 5'

|O| 24 x 16 Vanity

⊓ 12" RGH Toilet

← Chimney

5'0"

3'6"

↑
Rearyard

Kitchen, Bathrooms & Carpentry – Vinyl Windows & Doors
General Remodeling
Better Business Bureau Member – Lic. #001120

| NOTICE OF:<br>☒ REFUSAL<br>☐ REFERRAL<br>☐ SPECIAL USE PERMIT | CITY OF PHILADELPHIA<br>DEPARTMENT OF LICENSES & INSPECTIONS<br>Municipal Services Building, Concourse Level<br>1401 John F. Kennedy Boulevard<br>Philadelphia, PA 19102 | DATE OF REFUSAL<br>1-20-10 | APPLICATION #<br>234786 |
|---|---|---|---|
| | | ZONING DISTRICT(S)<br>R-10 RESIDENTIAL DISTRICT | |

**ADDRESS/LOCATION:** **2103 N. WOODSTOCK STREET**

| APPLICANT:<br>WESSIE SIMS (OWNER) | ADDRESS:<br>4925 W. STILES STREET, PHILADELPHIA, PA 19131 |
|---|---|

**APPLICATION FOR:**

THE APPLICATION IS FOR A ROOMING HOUSE FOR A TOTAL OF FIVE ROOMING UNITS WITH A MAXIMUM OF FIVE OCCUPANTS WITHIN AN EXISTING THREE STORY ATTACHED BUILDING; ALL PERSONS CAPABLE OF SELF PRESERVATION AND SELF SUSTAINING, NO PERSON UNDER THE JURISDICTION OF ANY COURT SYSTEM, (SIZE AND LOCATION AS SHOWN IN THE APPLICATION).

*This is What I applied For Five occupants*

**PERMIT FOR THE ABOVE LOCATION CANNOT BE ISSUED BECAUSE IT IS NOT IN COMPLIANCE WITH THE FOLLOWING PROVISIONS OF THE PHILADELPHIA CODE.   (CODES CAN BE ACCESSED ON LINE AT WWW.PHILA.GOV)**

| CODE REFERENCE | PROPOSED | | REQUIRED | PROPOSED |
|---|---|---|---|---|
| 14-205 | MINIMUM REAR YARD AREA FOR FIVE FAMILIES | | 544 SQ. FEET | 230 SQ. FEET |

ONE (1) USE REFUSAL
FEE TO FILE APPEAL: $250.00

| CHRISTINE QUINN | 12/28/09 |
|---|---|
| PLANS EXAMINER | DATE |

**NOTICE TO APPLICANT:**
AN APPEAL FROM THIS DECISION MUST BE MADE TO THE ZONING BOARD OF ADJUSTMENT, MUNICIPAL SERVICES BUILDING, 11TH FLOOR, 1401 JFK BOULEVARD, PHILADELPHIA, PA 19102, WITHIN THIRTY (30) DAYS OF DATE OF REFUSAL.



**Complaint filed in ECF by attorney - Judge assignment needed**

**Sherry R Bowman**  to: Rick Sabol, Nicole D'urso, Lisa DeAngelo, Amanda Frazier, Nicole Spicer

09/25/2012 01:15 PM

From:   Sherry R Bowman/PAED/03/USCOURTS

To:     Rick Sabol/PAED/03/USCOURTS@USCOURTS, Nicole
        D'urso/PAED/03/USCOURTS@USCOURTS, Lisa
        DeAngelo/PAED/03/USCOURTS@USCOURTS, Amanda

CA 12-5461 Yvonne Lewis v. Philadelphia Parking Authority filed by Ari Karpf, Esq. on September 25,
2012.